UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

GRANTLEY BRATHWAITE,

                             Plaintiff,

               -against-

CITY OF NEW YORK, individually and in their official
capacities as New York City police officers, RICARDO
MANTILLA, SEAN HAGGERTY, UNDERCOVER
OFFICER NO. 391, and JOHN or JANE DOES 1-10,

                         Defendants.
--------------------------------------------------------------------X

**COMPLAINT**

<u>Demand for Trial by Jury</u>

ECF CASE
Docket No. 19-cv-09235

Plaintiff, Grantley Brathwaite, by his attorneys, Sim & DePaola, LLP, for his complaint against the above defendants, City of New York, individually and in their capacities as New York City police officers, Ricardo Mantilla, Sean Haggerty, Undercover Officer No. 391, and John or Jane Does 1-10, alleges and states as follows:

## **PRELIMINARY STATEMENT**

1.     This is a civil rights action, in which plaintiff seeks relief, vis-à-vis 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, the common law of the State of New York and the self-executing or implied private causes of action within the New York State Constitution for the violation of his civil rights, as guaranteed and protected by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, as well as the laws and Constitution of the State of New York.

2.     The following claims arise from a July 9, 2018 incident, in which defendants, acting under color of state law, unlawfully stopped, questioned, searched, assaulted, battered, arrested

and detained Mr. Brathwaite. As a result, Mr. Brathwaite was deprived of his liberty and suffered serious physical and psychological injuries.

3.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court may deem just and proper.

## JURISDICTION

4.      This action arises under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, as well as the Laws and Constitution of the State of New York.

5.      The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

6.      Venue is laid within the Southern District of New York in that Defendant, City of New York, is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

7.      Plaintiff, Grantley Braithwaite ("Mr. Brathwaite"), is Black or African-American male, who resides within the County, City and State of New York.

8.      Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

9.      At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD") was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision,

discipline and retention and conduct of all NYPD personnel, including police officers, detectives and supervisory officers as well as the individually named Defendants herein.

10.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

11.     Defendant, Ricardo Mantilla ("Mantilla"), was, at all times here relevant, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Mantilla was, at all times relevant herein, a police officer or detective under Shield No. 523, Tax No. 942118, at Narcotics Borough Manhattan South located at 1 Police Plaza, New York, New York 10038. Defendant Mantilla is being sued in his individual and official capacities.

12.     Defendant, Sean Haggerty ("Haggerty"), was, at all times here relevant, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Haggerty was, at all times relevant herein, a police officer or detective under Shield No. 4923, and Tax No. 945800, at Narcotics Borough Manhattan South located at 1 Police Plaza, New York, New York 10038. Defendant Haggerty is being sued in his individual and official capacities.

13.     Defendant, Undercover Officer No. 391 ("UC 391"), was, at all times here relevant, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant UC 391 was, at all times relevant herein, a police officer or detective under undercover number 391, at Narcotics Borough Manhattan South located at 1 Police Plaza, New York, New York 10038. Defendant UC 391 is being sued in his individual and official capacities

14.     At all times relevant Defendants John or Jane Does 1 through 10 were police officers, detectives, supervisors, policymakers and/or officials employed by the NYPD. At this time, Plaintiff does not know the true names and/or tax registration numbers of Defendants John or Jane Does 1 through 10 but is within knowledge of the defendants.

15.     At all times relevant herein, Defendants John or Jane Does 1 through 10 were acting as agents, servants and employees of the City of New York, the NYPD. Defendants John or Jane Does 1 through 10 are being sued in their individual and official capacities.

16.     At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

17.     Plaintiff has satisfied all conditions precedent prior to the commencement of this action.

## FACTUAL CHARGES

18.     On July 9, 2018, at approximately 5:25 p.m., Mr. Brathwaite was walking in Washington State Park, within the County, City and State of New York, where he had engaged to meet a friend.

19.     On said date, time and location, Mr. Brathwaite was illegally searched and seized by Defendants, including Mantilla, Haggerty and UC 391.

20.     Defendants, including Mantilla, Haggerty, and UC 391, directed the stop, search, and arrest of Mr. Brathwaite.

21.     Mr. Brathwaite was told to put his hands behind his back. Mr. Brathwaite complied with officers' orders.

22.     Mr. Brathwaite had multiple assault and batteries committed to his person including but not limited to being unlawfully handcuffed.

23.     Defendants, including Mantilla, Haggerty, and UC 391, falsely alleged that Mr. Brathwaite approached UC 391 at the south east corner of Washington Square North and 5th Avenue, County and State of New York, and allegedly stated "I can get dimes."

24.     Upon information and belief, "dimes" is a cipher for $10.00 quantities of marijuana or other illicit substances.

25.     Mr. Brathwaite did not approach any individual in said vicinity or state "I can get dimes," or any similar statement, that may pertain to the procurement or sale of illicit substances or "dimes."

26.     Defendants, including Mantilla, Haggerty, and UC 391, falsely alleged that UC 391 handed Mr. Brathwaite Forty USD ($40.00), in exchange for two (2) zip-lock bags of marijuana.

27.     Mr. Brathwaite vehemently denies that said exchange ever transpired or was even attempted.

28.     Mr. Brathwaite never sold or gave any individual, including defendant UC 391, a quantity of marijuana or any other illicit substance, as falsely alleged by defendants.

29.     Mr. Brathwaite was never in possession of any marijuana, controlled substances or drug paraphernalia.

30.     Defendants, including Mantilla, Haggerty, and UC 391, proceeded to unlawfully search the person of Mr. Brathwaite in plain view of nearby pedestrians.

31.     Defendants, including Mantilla, Haggerty and UC 391, knowingly and intentionally fabricated a completely specious narrative, regarding alleged events that preceded and followed Mr. Brathwaite's arrest, namely Mr. Brathwaite's sale of marijuana to defendant UC391 marijuana and defendant Haggerty's subsequent recovery of marijuana from Mr. Brathwaite's pocket.

32.     Eventually, Mr. Brathwaite was taken to an NYPD precinct, where he was criminally processed by Defendants, including Mantilla, Haggerty, and UC 391.

33.     Mr. Brathwaite's arresting officer was defendant Mantilla, who knowingly signed the perjurious criminal court complaint against him, under Docket No. 2018NY02954, in which it was falsely alleged that Mr. Brathwaite engaged in the criminal sale and unlawful of marihuana.

34.     Upon information and belief, defendant UC 391 signed a perjurious supporting deposition or affidavit, attesting or affirming that Mr. Brathwaite illegally sold marijuana to UC 391, despite being fully aware that no such sale occurred.

35.     Defendants, including Mantilla, Haggerty, and UC 391, were fully aware that Plaintiff did not commit said crime or violation, but knowingly and intentionally chose to state otherwise to justify an unwarranted and invalid arrest.

36.     Defendants, including Mantilla, Haggerty, and UC 391, intentionally forwarded said false information to the New York County District Attorney's Office, so that a criminal prosecution would be initiated against Mr. Brathwaite.

37.     As a result, Mr. Brathwaite was compelled to return to court on multiple occasions to contest the false accusations against him.

38.     Mr. Brathwaite was maliciously prosecuted, from the date of his arraignment, on, or about, July 10, 2018, until the unconditional dismissal of all criminal charges on January 10, 2019.

39.     Defendants never possessed a judicially authorized warrant to search or arrest plaintiff.

40.     Defendants, including Mantilla, Haggerty, and UC 391, knowingly and intentionally fabricated said specious allegations to conceal their illegal, tortious and sinister designs, namely their intentional stop, arrest and prosecution of an individual they knew to be innocent, so that

they would be credited with an additional arrest, which would simultaneously serve to help meet their arrest quota, while also ensuring that they would be the beneficiaries of valuable and coveted overtime hours, which are subject to an elevated compensatory rate of one-and-one-half times their standard pay rate.

41.    Defendants have displayed a pattern and practice of fabricating drug sales and then attributing said fabricated sales to innocent, yet vulnerable individuals, such as plaintiff, so that they would be credited for additional arrests and receive overtime compensation.

42.    Plaintiff was wrongfully incarcerated for approximately two (2) days or approximately twenty-three (23) hours, until his release on, or about, July 10, 2018, at approximately 4:00 pm.

43.    During all of the events described, defendants, including Mantilla, Haggerty, and UC 391, acted maliciously and with intent to injure Plaintiff.

44.    At all times relevant hereto, Defendants, including Mantilla, Haggerty, and UC 391, were involved in the decision to arrest Plaintiff without probable cause or failed to intervene when they observed others arresting Plaintiff without probable cause.

45.    Defendants, including Mantilla, Haggerty, and UC 391, would not have falsely arrested or maliciously prosecuted Mr. Braithwaite, if he was a different color or race, because defendants impermissibly attribute criminal guilt or activity to individuals who look like Mr. Brathwaite.

46.    Defendants, including Mantilla, Haggerty, and UC 391, selectively treated Mr. Brathwaite, due to his race or color, because defendants observed individuals of different colors or races, who were in the same area of the park and walking and acting in the same or similar manner as plaintiff, yet only chose to stop and arrest plaintiff.

47.     Defendants, including Mantilla, Haggerty, and UC 391, engaged in a conspiracy to increase the quantity and rate of their arrests, fulfill their arrest quota, receive additional overtime compensation and satisfy their racist, biased and prejudicial desires and motivations.

48.     Defendants, including Mantilla, Haggerty, and UC 391, engaged in multiple overt acts in furtherance of said conspiracy, including the fabrication of an undercover marijuana purchase and arrest operation, the actual stop, search, arrest and detainment of Mr. Brathwaite, as well the forwarding of said spurious narrative to the District Attorney's Office, so that a criminal prosecution would be commenced.

49.     Defendants, including Mantilla, Haggerty, and UC 391, in furtherance of said conspiracy and their invidiously discriminatory and prejudicial designs, specifically targeted Mr. Brathwaite as the seller from their fabricated narrative, because of his status as a Black male, which defendants impermissibly associate with criminal activity.

50.     Defendants, including Mantilla, Haggerty, and UC 391, proceeded to fabricate a false narrative, which would require each defendant to perjuriously affirm to documents or allegations submitted to the court, thereby rendering defendants united in interest, due to their equal culpability.

51.     Plaintiff asserts that the defendants, including Mantilla, Haggerty, and UC 391, who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious

wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact their police officers.

52.    Defendants and other officers serving in the employ of the NYPD and City of New York have blatantly, shamelessly, consistently and repeatedly committed acts that were violative of the civil rights guaranteed and protected by Constitution of the United States, as well as the laws and constitution of the State of New York, without incurring any ramifications for such misconduct and with the ostensibly full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

53.    *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Attached hereto, as Exhibit A, and incorporated by reference herein, are various articles and reports detailing the magnitude and overwhelming prevalence of incidents in which police officers or detectives were caught lying, including instances that resulted in the arrest and imprisonment of innocent people. Also detailed, is the NYPD's stubborn refusal to engage in corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to reward and promote these officers, including those who were inculpated via some incontrovertible form of evidence.

54.    On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting the fact that the substantiation of a claim against an officer will invariably rely on the presence of

incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

55.    On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

56.    On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. This article has particular relevance to the case at bar, because Det. Franco and the individually named defendants herein, are all detectives or officers assigned to the Manhattan South Narcotics Bureau. The article described how Det. Franco lied about

observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

57.     Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

58.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

59.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in Plaintiff's arrest without probable cause.

60.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

61.     Defendants' actions, pursuant to plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

62.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of the NYPD and City of New York.

63.     Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers,

or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was extremely high.

64. Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who interact with defendants, including Mantilla, Haggerty, and UC 391.

65. Upon information and belief, within only the last five (5) years, defendant Mantilla has been named as a defendant in at least seven (7) lawsuits that have accused him of committing violations similar or identical to those alleged herein.

66. Upon information and belief, within only the last five (5) years, defendant Haggerty has been named as a defendant in at least two (2) lawsuits that have accused him of committing violations similar or identical to those alleged herein.

67. As a direct and proximate result of the acts of the Defendants, including Mantilla, Haggerty, and UC 391, plaintiff suffered the following injuries and damages: violations of his rights, pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, violations of New York State law, physical injury, physical pain and suffering,

emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, loss of liberty and harm to reputation.

### FIRST CAUSE OF ACTION
Unlawful Search and Seizure Under
New York State Law

68.     The above paragraphs are here incorporated by reference as though fully set forth.

69.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

70.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

71.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

72.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

73.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 12, of the New York State Constitution.

74.     Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

75.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SECOND CAUSE OF ACTION
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

76.     The above paragraphs are here incorporated by reference as though fully set forth.

77.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

78.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

79.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

80.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

81.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 12, of the New York State Constitution.

82.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
False Arrest and False Imprisonment Under
New York State Law

83.     The above paragraphs are here incorporated by reference as though fully set forth.

84.     Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

85.     Plaintiff was conscious of his confinement.

86.     Plaintiff did not consent to his confinement.

87.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

88.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

89.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

90.     The above paragraphs are here incorporated by reference as though fully set forth.

91.     The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

92.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

93.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

94.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFITH CAUSE OF ACTION
Assault and Battery Under
New York State Law

95.     The above paragraphs are here incorporated by reference as though fully set forth.

96.     Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful or offensive touching.

97.     Defendants engaged in and subjected plaintiff to immediate harmful or offensive touching and battered him without his consent.

98.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

99.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

100.    The above paragraphs are here incorporated by reference as though fully set forth.

101.    The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

102.    Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

103.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

104.    The above paragraphs are here incorporated by reference as though fully set forth.

105.    Defendants initiated the prosecution against Plaintiff.

106.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

107.    Defendants acted with malice, which may be inferred in the absence of probable cause.

108.    The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

109.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

110.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

111.    The above paragraphs are here incorporated by reference as though fully set forth.

112.    Defendants initiated the prosecution against Plaintiff.

113.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

114.    Defendants acted with malice, which may be inferred in the absence of probable cause.

115.    The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

116.    Accordingly, Defendants violated Plaintiff's Fourth Amendment rights.

117.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

118.    The above paragraphs are here incorporated by reference as though fully set forth.

119.    Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

120.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

121.    Defendants intended to inflict substantial harm upon plaintiff.

122.    Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

123.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

124.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

125.    The above paragraphs are here incorporated by reference as though fully set forth.

126.    Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

127.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution against plaintiff, especially with the absence of any cognizable probable cause.

128.    Defendants intended to inflict substantial harm upon plaintiff.

129.    Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

130.    Defendants' actions deprived plaintiff of his right to free from illegal searches and seizures, as well as his right not to be deprived of his liberty without due process of law.

131.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
New York State Law

132.    The above paragraphs are here incorporated by reference as though fully set forth herein.

133.    Defendants fabricated false evidence to be used against plaintiff that was likely to influence a jury's decision and forwarded said false information to the New York County District Attorney's Office.

134.    Defendants' actions deprived plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

135.    Accordingly, defendants violated plaintiff's right to a fair trial, pursuant to the Sixth Amendment to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

136.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

137.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TWELFTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

138.    The above paragraphs are here incorporated by reference as though fully set forth.

139.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to the New York County District Attorney's Office.

140.    Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

141.    Accordingly, defendants violated Plaintiff's right to a fair trial, pursuant to the Sixth Amendment to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

142.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRTEENTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress Under
New York State Law

143.    The above paragraphs are here incorporated by reference as though fully set forth herein.

144.    Defendants' conduct was extreme and outrageous.

145.    Defendants' extreme and outrageous conduct was perpetrated with the intent to cause, or with disregard to a substantial probability of causing, severe emotional distress to Plaintiff.

146.    Defendants' extreme and outrageous conduct is causally related to Plaintiff's injuries.

147.    Defendants' extreme and outrageous conduct caused Plaintiff to sustain extreme emotional distress.

148.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

149.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FOURTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
New York State law

150.    The above paragraphs are here incorporated by reference as though fully set forth herein.

151.    Plaintiff is a person of color and a Black or African-American male.

152.    Defendants discriminated against Plaintiff on the basis of his race, color, national origin, ethnicity, religion, gender or sex.

153.    Defendants also engaged in the selective treatment of Plaintiff, in comparison to others

similarly situated.

154.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as color, race, ethnicity, national origin, gender, sex, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

155.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

156.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

157.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

158.    Accordingly, defendants violated Plaintiff's civil rights, pursuant to the Fourteenth Amendment to the United States Constitution, Article I, Section 11, of the New York State Constitution and Article VII, Section 79-n, of the New York State Civil Rights Law.

159.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

160.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 and 1983 Against Individual Defendants

161.    The above paragraphs are here incorporated by reference as though fully set forth herein.

162.    Plaintiff is a person of color and a Black or African-American male.

163.    Defendants discriminated against Plaintiff on the basis of his race, color, national origin, ethnicity, religion, gender or sex.

164.    Defendants also selectively treated Plaintiff in comparison to others similarly situated.

165.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as color, race, ethnicity, national origin, sex, gender, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

166.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

167.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

168.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

169.    Accordingly, defendants violated Plaintiff's civil rights, pursuant to the Fourteenth Amendment to the United States Constitution, Article I, Section 11, of the New York State Constitution and Article VII, Section 79-n, of the New York State Civil Rights Law.

170.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SIXTEENTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 and 1986 Against Individual Defendants

171.    The above paragraphs are here incorporated by reference as though fully set forth herein.

172.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of his rights to, to be free from unreasonable searches and seizures, to be afforded a fair trial, to not be deprived of his liberty or property without due process of law, to the equal protection of the laws, or of the privileges and immunities under the laws and constitutions of the United States and of the State of New York.

173.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

174.    As a result, Plaintiff sustained injuries to his person, was deprived of his liberty or was deprived of rights or privileges of citizens of the United States.

175.    Defendants' conspiracy was motivated by a desire to inhibit or punish Plaintiff for exercising his constitutional rights, or because of some racial, otherwise class-based, invidious or discriminatory animus.

176.    The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or in process of being committed, possessed the power to prevent or aid in the prevention of the conspiratorial objective, and neglected to do so.

177.    Accordingly, defendants violated Plaintiff's rights, pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

178.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SEVENTEENTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

179.    The above paragraphs are here incorporated by reference as though fully set forth.

180.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

181.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

182.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

183.    The above paragraphs are here incorporated by reference as though fully set forth.

184.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

185.    Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

186.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINETEENTH CAUSE OF ACTION
Negligent Hiring, Training, Retention and Supervision Under
New York State Law

187.    The above paragraphs are here incorporated by reference as though fully set forth.

188.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

189.    Defendant City breached those duties of care.

190.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

191.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

192.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

193.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTIETH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

194.    The above paragraphs are here incorporated by reference as though fully set forth.

195.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

196.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

197.    Defendant City and its policymakers failed to provide adequate training or supervision to their subordinates to such an extent that is tantamount to a deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

198.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

199.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

200.    Defendant City's conduct caused the violation of plaintiff's civil rights, pursuant to Constitution of the United States.

201.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants, jointly and severally, as follows:

a) In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b) Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c) Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d) Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

**e)** Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 4, 2019

Respectfully submitted,

 S/ Samuel C. DePaola
By: Samuel C. DePaola, Esq.
Bar Number: SD0622
Sim & DePaola, LLP
*Attorneys for Mr. Brathwaite*
4240 Bell Blvd, Ste 201
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
sdepaola@simdepaola.com
