UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GRANTLEY BRATHWAITE,

                                    Plaintiff,

            -against-

CITY OF NEW YORK, et al.,

                                    Defendants.

19-cv-09235 (JLR) (BCM)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

Grantley Brathwaite ("Brathwaite" or "Plaintiff") brings this lawsuit for violations of Section 1983 and related state laws against the City of New York and the following individuals in their personal and official capacities: Detective Ricardo Mantilla, Detective Sean Haggerty, Undercover Officer No. 391, and John or Jane Does 1-10 (collectively, "Defendants"). *See generally* ECF No. 1 ("Compl."). Plaintiff alleges that he was falsely arrested after an undercover ("UC") police officer misidentified him during a buy and bust drug operation in Washington Square Park, and he was thereafter subjected to other federal constitutional and state law violations. *Id.* The City of New York, Mantilla, Haggerty, and Undercover Officer No. 391 move for partial summary judgment. *See generally* ECF No. 79 ("Mot."). For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND[1]

Shortly after 5:00 p.m. on July 8, 2018, Plaintiff entered Washington Square Park in Manhattan on the east side of the park near a statue of Garibaldi. *See* Pl. 56.1 Counter ¶ 1.

---

[1] Unless otherwise noted, the facts stated herein are undisputed.

In support of their motion for summary judgment, Defendants submitted: a declaration of Andrew B. Spears (ECF No. 80 or "Spears Decl.") with attached exhibits (ECF Nos. 80-1

Detective Ricardo Mantilla ("Mantilla") was on duty at the park that day as an arresting officer for the Manhattan South Narcotics Division buy and bust operation. *Id.* ¶ 2. Detective Sean Haggerty ("Haggerty") was also on duty at the park as part of the same narcotics division, and was assigned to the police van. *Id.* ¶ 3. Both detectives were wearing plain clothes. *Id.* ¶ 5. In addition to Detectives Mantilla and Haggerty, an undercover officer from the same division, Undercover Officer No. 391 ("UC 391"), was on duty in the park conducting undercover buy and bust transactions. *Id.* ¶ 4.

Between approximately 5:00 p.m. and 5:30 p.m., UC 391 spoke to a non-party individual about buying marijuana while inside the park near Garibaldi Square, located on the east side of the park. *Id.* ¶ 6. During the conversation, UC 391 asserts that an individual he now identifies as Plaintiff approached both UC 391 and the non-party individual and offered to obtain marijuana for UC 391. *Id.* ¶ 7; ECF No. 90-5, Raqui Decl, Ex. 5 ("UC 391 Depo.") at 46-47. UC 391

---

through 80-10); Defendants' statement of undisputed facts pursuant to Local Rule 56.1 (ECF No. 81 or "Defs. 56.1 Statement"); and a memorandum of law in support (ECF No. 82 or "Br."). In opposition, Plaintiff submitted: a declaration of Ataur Raquib (ECF No. 90 or "Raquib Decl.") with attached exhibits (ECF Nos. 90-1 through 90-5); a counterstatement to Defendants' Rule 56.1 Statement (ECF No. 91 or "Pl. 56.1 Counter"); a separate Rule 56.1 Statement (ECF No. 92 or "Pl. 56.1"); and a memorandum of law in opposition (ECF No. 93 or "Pl. Opp."). Defendants then submitted a reply memorandum of law (ECF No. 94 or "Reply").

Defendants assert that the Court should not consider Plaintiff's Rule 56.1 counterstatement because it does not comply with the Court's Rules. Reply at 1-3. Local Civil Rules 56.1 directs a party opposing a summary judgment motion to respond to the movant's statement, "and if necessary," submit "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* (quoting Local Civil Rule 56.1). Plaintiff's separate 56.1 statement seems to endeavor to do the latter. While it does not comply completely with the local rules, the Court will consider it and will review the record as a whole. *See Ali v. Ramos*, No. 16-cv-01994 (ALC), 2020 WL 5817009, at *1 (S.D.N.Y. Sept. 30, 2020) (considering procedurally deficient 56.1 statement and record as a whole because "a district court [also] has broad discretion to determine whether to overlook a party's failure to comply with local rules . . . [and] may in its discretion opt to conduct an assiduous review of the record" (internal citation and quotation marks omitted)).

testified that Plaintiff offered to procure two dime bags of marijuana.  UC 391 Dep. at 47:7-12.  UC 391 further testified that he gave Plaintiff $20 in pre-recorded bills and Plaintiff left for a few minutes.  *Id.* at 47:12-14.  While Plaintiff was gone, UC 391 testified that the nonparty told him that the marijuana that Plaintiff was retrieving "was good," which suggested to UC 391 that he knew Plaintiff.  *Id*. at 49:14-25.  UC 391 contends that Plaintiff then returned with two dime bags of marijuana.  *Id*. at 47:14-20.

Plaintiff does not dispute that this drug transaction took place with UC 391 but disputes that he was the individual that engaged in the sale.  Plaintiff testified that he came to Washington Square Park that day to visit his then-girlfriend, Hellen Castiglione.  Pl. 56.1 ¶ 8.  He asserts that he entered the park, made no stops, said hello to someone by the Garibaldi statue, and then sat down on a grassy knoll with Ms. Castiglione, only to be suddenly arrested less than a minute after he sat down.  *Id.* ¶¶ 8, 12.

There is no dispute that after the drug transaction, UC 391 signaled to the Manhattan South Narcotics Division field team, including Detectives Mantilla and Haggerty, that he had been involved in a marijuana sale with Plaintiff and the non-party individual near Garibaldi Square.  Pl. 56.1 Counter ¶ 8.  While Plaintiff purports to dispute what UC 391 communicated to Mantilla and Haggarty, the UC 391 testimony cited by Plaintiff does <u>not</u> establish, as Plaintiff characterizes it, that UC 391 "could not recall positively confirming Plaintiff as the individual who sold him marijuana."  *Id*.  Rather, UC 391 testified that he identified to another team member that Plaintiff and the non-party individual had just sold him marijuana, *see* UC 391 Depo. at 52:6-52:22, and that he did not recall *how he later confirmed* Plaintiff was the individual from whom he bought marijuana – either by viewing him be arrested or in custody –

but recalls identifying Plaintiff at least when he was in custody with the nonparty, *id.* at 59:17-60:2.

After the signal was given by UC 391, Detectives Mantilla and Haggerty approached Plaintiff and instructed him to put his hands behind his back.  Pl. 56.1 Counter ¶¶ 9-10.  Plaintiff disputes that he was approached near Garibaldi Square "in the vicinity of the drug transaction" and instead contends that he was sitting in a grassy knoll about 20-25 feet into the park with Ms. Castiglione.  *Id.* ¶ 9.  The detectives placed Plaintiff in handcuffs.  *Id.* ¶ 10.  Plaintiff did not resist arrest and the officers did not use any force to arrest Plaintiff, other than to place him in handcuffs.  *Id.* ¶ 11.  Plaintiff then said to the officers, "go ahead, search me," and the officers searched Plaintiff.  *Id.* ¶ 12.  Plaintiff does not dispute that he said this to the officers, but contends that it does not legally constitute consent to be searched.  *Id.*

Detectives Mantilla and Haggerty then brought Plaintiff to a New York Police Department ("NYPD") prisoner van that was parked nearby.  *Id.* ¶ 13.  On the way to the van, Plaintiff told the detectives that his handcuffs were too tight, and one of the detectives loosened the handcuffs.  *Id.* ¶ 14.  At the NYPD prisoner van, Plaintiff was searched again by Haggarty.  *Id.* ¶ 15.  Although Haggarty does not independently recall it, ECF No. 90-4, Raquib Decl., Ex. D ("Haggarty Depo.") at 37:4-7, the Misdemeanor Complaint completed by Mantilla states that Mantilla was informed by Haggarty that the search resulted in the recovery of one bag of marijuana from Plaintiff's pocket, ECF No. 80-6, Spears Decl., Ex. F ("Crim. Compl.").   The NYPD "PETS Property Clerk Invoice" further reflects that one baggie of marijuana was "vouchered as arrest evidence recovered by Det. Haggarty from Def. [Grantley Brathwaite] F/R/P/P [Front Right Pants Pocket]."  ECF No. 90-3, Raquib Decl., Ex. C ("Mantilla Dep.") at 65:2-4; ECF No. 80-7, Spears Decl., Ex. G ("Property Invoice").  Plaintiff disputes this and

contends that no marijuana was found on him when he was searched by Haggarty, and the only item found on Plaintiff when he was searched was $13.  ECF No. 90-1, Raquib Decl., Ex. 1 ("50-h Exam.") at 16:7-9; ECF No. 90-2, Raquib Decl., Ex. 2 ("Pl. Depo.") at 44:12-14, 60:9-61:6. None of the pre-recorded money used by UC 391 was found on Plaintiff.  UC 391 Depo. at 84:19-85:9; Pl. 56.1 ¶ 13.

Plaintiff was then placed in the van and taken to Police Service Area 4.  Pl. 56.1 Counter ¶ 16.  Plaintiff was later taken to Central Booking where he was arraigned and charged with Criminal Sale of Marijuana in the Fourth Degree and Unlawful Possession of Marijuana.  *Id.* ¶ 17.  At about 3:00 p.m. on July 10, 2018, the day after his arrest, Plaintiff was released on his own recognizance.  *Id.* ¶ 18.  Plaintiff appeared in court on "three or four" occasions in connection with the charges he faced after this arrest.  *Id.* ¶ 20.  On January 10, 2019, the criminal charges were dismissed and sealed.  *Id.* ¶ 21.

Again, Plaintiff disputes having anything to do with the marijuana transaction with UC 391 and believes he was arrested due to a similarity in appearance between himself and the non-party individual who was also arrested in connection with the drug sale inside the park on July 9, 2018.  *Id.* ¶ 22.  Plaintiff disputes that he knew the non-party individual but concedes that they were both black males with dreadlocks.  Pl. Depo. at 55:18-58:19.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on October 6, 2019.  *See generally* Compl.  On January 24, 2020, the City of New York and Mantilla answered the Complaint by largely denying Plaintiff's allegations and asserting eleven affirmative defenses, including that Defendants had probable cause to arrest Plaintiff and are protected by qualified immunity.  *See generally* ECF No. 12 ("City and Mantilla Ans.").  Haggerty and UC 391 filed a similar answer on February 13,

2020.  *See* ECF No. 15 ("Haggerty and UC 391 Answer").  The case was reassigned to the undersigned on September 16, 2022.  *See* ECF No. 77.

On October 14, 2022, Defendants moved for summary judgment.  *See* Mot.  Plaintiff did not timely oppose the motion.  On November 17, 2022, the Court notified Plaintiff that it would deem the motion for summary judgment unopposed unless Plaintiff showed cause for his failure to file any opposition by the November 14, 2022 deadline.  ECF No. 85.  On November 29, 2022, Defendants asked the Court to deem the summary judgment motion unopposed and dismiss the case under Federal Rules of Civil Procedure ("Rules") 37 and/or 41(b) for failure to comply with the Court's orders.  ECF No. 86.  The Court deemed the motion unopposed on November 30, 2022 and scheduled a status conference regarding the request to dismiss the case.  ECF No. 87.  On December 7, 2022, Plaintiff resurfaced and filed a letter asking for an extension of time to respond to the summary judgment motion.  ECF No. 88.  After a conference on December 13, 2022, the Court granted the request for an extension to respond to the summary judgment motion and denied the request for Rule 37 and/or Rule 41(b) sanctions.  ECF No. 89.  Between December 14 and 15, 2022, Plaintiff filed his opposition to Defendants' motion and accompanying documents.  Raquib Decl.; Pl. 56.1 Counter; Pl. 56.1; Pl. Opp.  On January 20, 2023, Defendants filed their reply to Plaintiff's opposition brief.  Reply.

## SUMMARY JUDGMENT STANDARD

Under Rule 56, a moving party is entitled to summary judgment if, on any claim or defense, that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  A "genuine" dispute is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if it "might

6

affect the outcome of the suit under the governing law . . . ." *Id.* Thus, "the substantive law will identify which facts are material." *Id.*

At summary judgment, the court's task is simply to "discern[] whether there are any genuine issues of material fact to be tried, not to decid[e] them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Therefore, "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). The court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (internal citation omitted); *see also* Rule 56(c)(4).

## DISCUSSION

### I.   Abandoned Claims

As a threshold matter, Plaintiff has abandoned several of his claims. Plaintiff states that he does not oppose Defendants' summary judgment motion as to the following claims: Malicious Abuse of Process (Counts 9-10); Denial of Right to Fair Trial (Counts 11-12); Deprivation of Rights and Denial of Equal Protection of the Laws (Counts 14-15); Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under 42 U.S.C. §§ 1983, 1985 and 1986 (Count 16); Negligent Hiring, Training, Retention and Supervision (Count 19); and Municipal

"*Monell*" Liability (Count 20).  Opp. at 6.  Accordingly, the Court finds for Defendants on those claims and they are dismissed.

In addition to these explicitly abandoned claims, Plaintiff also abandoned his claim of Intentional Infliction of Emotional Distress ("IIED") (Count 13).  When a party moves for summary judgment against a claim and the other party does not raise any opposition, courts deem the claim abandoned.  *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) ("In his brief, [the plaintiff] did not raise any arguments opposing [the d]efendants' motion regarding these two claims.  Accordingly, the Court deems [the plaintiff's] first and third claims abandoned.") (collecting cases); *Banyan v. Sikorski, et al.*, No. 17-cv-04942 (LJL), 2021 WL 2156226, at *3 (S.D.N.Y. May 27, 2021) ("A court may find that a party has abandoned its claim, whether or not it explicitly states an intention to abandon such claim. The test of abandonment is whether the party respond[ed] to a defendant's arguments that the claim should be dismissed." (internal citation and quotation marks omitted)).  Defendants moved for summary judgment on this claim.  Br. at 24-25.  Plaintiff did not address IIED at all in his opposition brief.  *See generally* Opp.  The Court therefore grants judgment to Defendants on Count 13.

## II.     False Arrest and False Imprisonment (Counts 3 and 4)

Defendants move for summary judgment on the false arrest and false imprisonment claims under New York law and Section 1983 (Counts 3 and 4), arguing that Mantilla and Haggerty had probable cause to arrest Plaintiff.  Br. at 4-8.  Defendants do not move for summary judgment with respect to UC 391 on this ground.  *Id.* at 1 n.1.  But Defendants claim that all individual Defendants are entitled to qualified immunity on the false arrest claims.  *Id.* at 8-9.

The elements of false arrest and false imprisonment pursuant to Section 1983 and New York law are "substantially the same." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal citation omitted); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Therefore, the analysis of the state and the federal claims is identical." *Boyd v. City of N.Y.*, 336 F.3d 72, 75 (2d Cir. 2003). The elements for false imprisonment or false arrest are: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003) (internal citation omitted); *Brandon*, 705 F. Supp. 2d at 269.

With respect to the fourth element, when an arresting officer has probable cause for an arrest, claims for false arrest and false imprisonment fail because probable cause is a complete defense. *Boyd*, 336 F.3d at 75; *Singer*, 63 F.3d at 118; *Weyant*, 101 F.3d at 852. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007). Probable cause is judged based on "an objective basis" and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).

Even if an officer does not have probable cause for an arrest, the officer may still be shielded from liability based on qualified immunity. "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Weyant*, 101 F.3d at 857. "The availability of the defense depends on whether a reasonable

officer could have believed his action to be lawful, in light of clearly established law and the information [he or she] possessed." *Id.* (internal citation and quotation marks omitted). While qualified immunity protects officers from liability for federal causes of action, the doctrine "is not generally understood to protect officials from claims based on state law." *Jenkins*, 478 F.3d at 86-87. "Nevertheless, a similar doctrine exists under New York common-law," and if the court finds the officers are entitled to qualified immunity under federal law, summary judgment would also be appropriate on the state law false arrest claim. *Id.*

In the context of a false arrest, an officer is entitled to qualified immunity if the officer has "arguable probable cause" to make that arrest: that is, "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal citation omitted); *Caceres v. Port Auth. of N.Y. & N. J.*, 631 F.3d 620, 622 (2d Cir. 2011). "Arguable probable cause exists when 'a reasonable police officer in the same circumstance and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law.'" *Steinbergin v. City of N.Y.*, No. 21-536, 2022 WL 1231709, at * 2 (2d Cir. Apr. 27, 2022) (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997)).

Here, Mantilla and Haggerty contend that they are entitled to summary judgment on Plaintiff's false arrest claim because they had probable cause to arrest Plaintiff. Br. at 6-8. Mantilla and Haggerty assert that they reasonably relied on UC 391's direction and signal to arrest Plaintiff. *Id.* Mantilla, Haggerty, along with UC 391, alternatively argue that they are entitled to qualified immunity on these claims. *Id.* at 20-21. Plaintiff disagrees and contends that Mantilla and Haggerty did not have probable cause to arrest him because they relied solely

on information from UC 391 who, according to Plaintiff, misidentified Plaintiff.  Opp. at 17-19.

Plaintiff further disputes the applicability of qualified immunity to this claim (and all claims).

*Id.* at 23-26.

      1.  UC 391

      As stated previously, UC 391 does not seek summary judgment with respect to whether

he caused Plaintiff to be falsely arrested.  Br. 1 n.1.  This is presumably because there are

questions of fact as to whether UC 391 had probable cause to identify Plaintiff and cause his

arrest given that Plaintiff disputes that he was the individual from whom UC 391 purchased

marijuana.  *See, e.g.*, *Duncan v. Cardova*, No. 10-cv-08089 (GBD) (DCF), 2014 WL 12687784,

at *4 (S.D.N.Y. Sept. 26, 2014) (denying summary judgment on false arrest claim where the

plaintiff disputed that he was involved in the narcotics transaction with the undercover agent who

identified him); *McKinley v. Crevatas*, No. 20-CV-03606 (KPF), 2023 WL 4364182, at *7

(S.D.N.Y. July 6, 2023) (observing that it was a "wise decision" for the undercover officer not to

move for summary judgment on false arrest claim because the plaintiff disputed that he engaged

in drug sale that the undercover officer purportedly observed).

      Given Plaintiff's testimony that he did not engage in the marijuana transaction with UC

391, a factual dispute exists that is also critical for determining arguable probable cause for

purposes of qualified immunity.  Pl. 56.1 Counter ¶ 8; *Bellamy v. City of New York*, 914 F.3d

727, 746 (2d Cir. 2019) (noting that "a § 1983 plaintiff's testimony alone may be independently

sufficient to raise a genuine issue of material fact").  Assuming that Plaintiff did not have any

involvement in the marijuana sale as he asserts, which the Court must accept for purposes of

Defendants' summary judgment motion, *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373

F.3d 241, 244 (2d Cir. 2004), then depending on the circumstances, there may be a basis to find

that it was not objectively reasonable for UC 391 to have identified Plaintiff in furtherance of his arrest and that no officers of reasonable competence could so find. *See Duncan*, 2014 WL 12687784, at *4 n.7 ("If, as Plaintiff contends, the transaction did not occur at all, it would not be objectively reasonable for Defendant UC 0059 to have identified and assisted in arresting Plaintiff, nor would officers of reasonable competence disagree on whether there was sufficient probable cause in this context."); *Brown v. City of N. Y.*, No. 08-cv-05095 (FB) (MDG), 2013 WL 1338785, at *3 (E.D.N.Y. April 1, 2013) (denying summary judgment to the defendants on the question of probable cause or arguable probable cause where the plaintiff disputed that he engaged in the narcotics transaction because "[i]f [the] plaintiff's version of events is credited, he was not involved in a drug transaction, and so there was no basis for [the officer] to radio his description or to arrest [the] plaintiff").

The court's analysis in *Richardson v. City of New York*, No. 02-cv-03651 (JG), 2006 WL 2792768 (E.D.N.Y. Sept. 27, 2006) is instructive. In that case, the plaintiff asserted, as Plaintiff does here, that he did not sell drugs to the undercover officer. *Id.* at *4. In rejecting a qualified immunity defense to the false arrest claim, the court explained that "it would [not] be unreasonable for a jury to infer that even if [the plaintiff] is not proved to have been the real drug dealer, a purchase was made and he fit the general description of the seller and that UC #7404 made a mistake at the show up," but it would also "not be unreasonable for a jury to conclude that no purchase was made and/or that the mistake [in identifying the plaintiff] was deliberate." *Id.* at *3. Such a finding would be critical because if the jury found that the undercover officer "knowingly made a false identification" that caused the plaintiff's arrest, qualified immunity would fail since "no reasonably competent officer could believe that it was lawful to identify [the plaintiff] falsely. . . ." *Id.* Just as in the present case, the plaintiff in *Richardson* did not have

12

independent evidence corroborating his testimony that he did not sell the drugs to the undercover officer. *Id.* at \*4. The court held that the plaintiff's testimony, which is admissible evidence, is "enough" to defeat summary judgment because the plaintiff is entitled on summary judgment to an "assumption that the jury will believe him." *Id.*; *see also Brandon*, 705 F. Supp. 2d at 271 (finding the defendant police officer not entitled to qualified immunity because it was disputed whether the officer saw the plaintiff toss a bag of drugs).

The Court is certainly not finding that there was any deliberate misidentification of Plaintiff in this case by UC 391. In fact, it may well be that even if a jury credits Plaintiff's testimony that he was not involved in the marijuana purchase with UC 391, UC 391 mistakenly identified Plaintiff under circumstances that demonstrate that it was objectively reasonable for the officer to believe that probable cause existed or that officers of reasonable competence could disagree on whether there was probable cause, which would be relevant for a determination regarding qualified immunity. Plaintiff himself argues in his brief that he was "arrested almost simultaneously with another individual who could be his doppelganger for the exact same criminal offense in a park filled with a decent crowd," and that "even if [UC 391] believed he [positively identified Plaintiff] – he did so mistakenly[.]" Opp. at 20. However, at this stage, given that there are questions of material fact regarding UC 391's identification of Plaintiff, summary judgment cannot be granted for UC 391 on the false arrest claim.

2. Mantilla and Haggerty

The analysis is different for Defendants Mantilla and Haggerty. They contend that they had probable cause, or at least arguable probable cause, to arrest Plaintiff for Criminal Sale of Marijuana in the Fourth Degree on July 9, 2018 based on the information and identification provided by UC 391. Br. at 6-7, 20-21. The Court agrees.

It is undisputed that on July 9, 2018, UC 391 purchased marijuana from an individual in Washington Square Park, signaled to the narcotics team including Mantilla and Haggerty that he had just engaged in a marijuana sale with Plaintiff and another individual, and Mantilla and Haggerty arrested Plaintiff in Washington Square Park shortly thereafter.  Pl. 56.1 Counter ¶¶ 8-9.  UC 391 then confirmed the identification either when he saw Plaintiff in custody with the nonparty or saw Plaintiff's arrest.  Pl. 56.1 ¶ 17.  Again, Plaintiff argues that he was not the person involved with the drug transaction and he was wrongly arrested by Mantilla and Haggarty.  Pl. 56.1 Counter ¶ 22.

For purposes of qualified immunity, where only arguable probable cause needs to be shown, "[a]n officer who participates in the arrest is . . . immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause."  *Annunziata v. City of N.Y.*, No. 06-cv-07637 (SAS), 2008 WL 2229903, at *4 (S.D.N.Y. May 28, 2008).  Here, summary judgment is appropriate because it was reasonable for Mantilla and Haggerty to rely on the identification and signal of UC 391 that Plaintiff had engaged in a marijuana sale with UC 391 in arresting him a few minutes after the sale.  *See, e.g.*, *Alicea v. City of New York*, No. 13-cv-07073 (JGK), 2016 WL 2343862, at *5-6 (S.D.N.Y. May 3, 2016) (finding that the arresting officers had "at least arguable probable cause" to arrest the plaintiff on the basis of description provided by another officer); *Anthony v. City of N.Y.*, 339 F. 3d 129, 138 (2d Cir. 2003) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (e.g. a

warrant, probable cause, exigent circumstances).” (internal citation and quotation marks omitted)).

Even affording Plaintiff all reasonable inferences and therefore assuming that UC 391 misidentified Plaintiff when he signaled to the team to arrest Plaintiff, arguable probable cause would still exist because Mantilla and Haggerty are entitled to rely on an undercover officer’s positive identification even if it later turns out to be mistaken.  *See, e.g.*, *Lauderdale v. City of N.Y.*, No. 15-cv-01486 (JGK), 2018 WL 1413066, at *5 (S.D.N.Y. March 19, 2018) (granting summary judgment on qualified immunity grounds for false arrest claim because it was “objectively reasonable for [the arresting officer] to rely on the identification by [the undercover officer] of the plaintiff as the individual who participated in the drug sale” even if the “identification was mistaken”); *Duncan*, 2014 WL 12687784, at *3 (granting summary judgment for the arresting officers where the arrest was based on a positive identification by an undercover officer “even if that identification – unbeknownst to them – was in fact mistaken or even fabricated”); *Richardson*, 2006 WL 2792768 at *4-5 (granting summary judgment for an arresting officer who relied on an identification from an undercover officer during a buy and bust because there were no facts or even a theory to support an inference that the arresting officer should have known that the identification was false).

Plaintiff has not taken issue with the substance of the information that UC 391 relayed to the arresting officers to signal that Plaintiff had engaged in the marijuana sale, nor provided any basis for finding that it would not have been objectively reasonable for Mantilla and Haggerty to rely on UC 391’s signal and identification at the time of the arrest.  There is no evidence in the record from which a jury could reasonably conclude that when arresting Plaintiff, Mantilla and Haggerty knew or should have known that UC 391’s identification of Plaintiff was false or

mistaken, nor any evidence that there was a basis for the officers to "harbor significant doubts about the credibility" of UC 391's statements.  *McKinley*, 2023 WL 4364182, at *6.  The Court is not persuaded by Plaintiff's contention that summary judgment should be denied because UC 391 could not recall the manner in which he positively confirmed Plaintiff as the individual from whom he purchased marijuana.  Opp. at 19.  UC 391 testified that he positively identified Plaintiff as the individual who sold him the drugs, even though he does not recall if his later confirmation of Plaintiff was during Plaintiff's arrest or when Plaintiff was in custody.  UC 391 Dep. at 52:6-11, 59:17-60:2.  The information that Mantilla and Haggerty possessed – namely, a positive identification from UC 391 that he had, just minutes before, purchased marijuana from Plaintiff (and confirmation of that identification at least once Plaintiff was in custody) – supports an objectively reasonable belief that Plaintiff had committed a crime sufficient for arguable probable cause to arrest.  *See Steinbergin*, 2022 WL 1231709, at *2 (affirming dismissal of false arrest claim on summary judgment because the arresting officer had arguable probable cause to arrest the plaintiff based on a description provided by the undercover officer who relayed to the arresting officer that he had purchased drugs from the plaintiff minutes before in the vicinity where the sale occurred).

Therefore, the Court grants judgment for Mantilla and Haggerty on Plaintiff's false arrest claims but not as to the claims against UC 391.  Plaintiff also brings a claim for false arrest against the City of New York under the doctrine of *respondeat superior*.  Compl. ¶ 88.  Because the false arrest claim against UC 391 remains, the *respondeat superior* claim against the City Defendant also survives.

### III.    Malicious Prosecution (Counts 7 and 8)

Defendants next move for summary judgment on Plaintiff's claims of malicious prosecution under both state law and Section 1983.  Br. at 7-8.  As an initial matter, "the

16

elements of . . . malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law." *Boyd*, 336 F.3d at 75 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992)).  Accordingly, the Court's analysis will be the same for both the state law claim of malicious prosecution and the Section 1983 claim for malicious prosecution.  *See id.*  "To establish a malicious prosecution claim . . . a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Coleman v. City of New York*, 688 F. App'x 56, 57 (2d Cir. 2017) (quoting *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010)).  "[I]f there was probable cause for the prosecution, then no malicious prosecution claim can stand." *Boyd*, 336 F.3d at 75.  In addition, "[a] plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'" *Singer*, 63 F.3d at 116.  This is because "[t]he Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person – *i.e.,* the right to be free of unreasonable or unwarranted restraints on personal liberty." *Id.*

Defendants argue that they are entitled to summary judgment on the malicious prosecution claim because there was probable cause, or at least arguable probable cause, to arrest and prosecute Plaintiff based on the information received from UC 351.  Br. at 7-8; 20-21.  "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd*, 336 F.3d at 76.  However, "[a] malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate

probable cause which were first uncovered after the arrest." *Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999). Therefore, an officer who is objectively reasonable in believing that he or she has probable cause to arrest is qualifiedly immune from a malicious prosecution claim unless the officer learns facts after the arrest that would negate the earlier determination of probable cause. *See Lauderdale*, 2018 WL 1413066, at *7 (collecting cases).

Here, Mantilla and Haggarty reasonably relied on the information from UC 391 in arresting Plaintiff, and the Court has found that they had arguable probable cause to arrest him. *See supra* at 13-16. Nothing occurred after the arrest and before the prosecution that would negate an earlier determination of probable cause that Plaintiff had engaged in the sale of marijuana. To the contrary, further confirmation was provided to the officers by UC 391 that Plaintiff was in fact the individual who sold him the drugs. UC 391 Depo. at 59:17-60:2. That the Complaint states that UC 391 paid Plaintiff $40 in pre-recorded bills instead of the $20 to which UC 391 testified, *compare* Crim. Compl. *with* UC 391 Depo. at 47:12-20, does not create enough of a discrepancy to negate the objective reasonableness of the determination that there was probable cause to arrest and prosecute Plaintiff based on a first-hand positive identification by UC 391.

Therefore, Mantilla and Haggarty had at least arguable probable cause to prosecute Plaintiff and are qualifiedly immune from this claim. *See Lauderdale*, 2018 WL 1413066, at *7 (finding that the officers were qualifiedly immune on a malicious prosecution claim because "there was no evidence presented suggesting that the officers subsequently learned of facts after the arrest that would negate their belief that they had arguable probable cause to arrest"); *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 611 (S.D.N.Y. 2013) ("Smith's claim for malicious prosecution fails because there was probable cause to arrest Smith, and there is no

evidence whatsoever that O'Rourke subsequently learned of facts that would negate his determination of probable cause.").[2]

However, because there are issues of fact as to whether UC 391 had probable cause or even arguable probable cause when he identified Plaintiff to be arrested and thereafter prosecuted, summary judgment is denied as to UC 391 on the malicious prosecution claim. *See supra* at 13-16.

For all of these reasons, Defendants' motion for summary judgment on the malicious prosecution claims is denied as to UC 391 and granted with respect to Haggarty and Mantilla. Given that the claim proceeds as against UC 391, the malicious prosecution claim remains as to the City of New York under a *respondeat superior* theory.  Compl. ¶ 109.

## IV.    Unlawful Search and Seizure (Counts 1 and 2)

Defendants also seek summary judgment on Plaintiff's unlawful search and seizure claims under both state and federal law.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is reasonableness.'"  *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).  Searches performed without a warrant, as they were in this case, are "*per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."  *United States v. Diaz*, 122 F. Supp. 3d 165, 170 (S.D.N.Y. 2015) (quoting *Katz v. United States*, 389 U.S. 347,

---

[2] Plaintiff's contention that no marijuana was found on him when he was searched by Haggarty, *see* Pl. 56.1 Counter ¶ 15, despite what is reflected in the policy inventory report and complaint, *see* Crim. Compl., Property Invoice, does not – even if credited – creates an issue of fact that would negate a determination of arguable probable cause to prosecute Plaintiff for sale of marijuana given the continued identification by UC 391 that he personally engaged in a marijuana sale with Plaintiff.

357 (1967)).  "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  The consent must be voluntary.  *See Florida v. Royer*, 460 U.S. 491, 497 (1983) (noting that "where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority").

Defendants assert that the search of Plaintiff when he was initially detained was reasonable because Plaintiff consented.  Br. at 12.  "The Fourth Amendment is not offended by a warrantless, suspicionless search to which a suspect consents."  *Winfield v. Trottier*, 710 F.3d 49, 54 (2d Cir. 2013).  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). The court must generally look at the facts and circumstances, because "a search may be lawful even if the person giving consent does not recite the talismanic phrase: 'You have my permission to search.'"  *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir. 1981).

But here, Plaintiff did essentially recite the talismanic phrase.  Plaintiff does not dispute that when he was initially detained by Defendants, he told the officers: "go ahead, search me." Pl. 56.1 Counter ¶ 12.  An objectively reasonable person would have understood Plaintiff to be consenting to a search of his person and backpack.  *See Winfield*, 710 F.3d at 55.

Plaintiff's only response is that he could not provide valid consent to a search when he was in physical custody.  Opp. at 21.  That is not so.  "[T]he fact of custody alone has never been

enough in itself to demonstrate a coerced confession or consent to search." *United States v. Watson*, 423 U.S. 411, 424 (1976); *see United States v. Crespo*, 834 F.2d 267, 271 (2d Cir. 1987) (noting that the voluntariness of consent must be evaluated and being under arrest "or even handcuffed, does not as a matter of law require a finding of coercion").  The Court must look to the totality of the circumstances and whether the officers had a reasonable belief that Plaintiff's consent to search was "freely and voluntarily given, and therefore valid." *United States v. Sylla*, No. 08-cr-00906 (KAM), 2010 WL 582575, at *9 (E.D.N.Y. Feb. 16, 2010).  Plaintiff has not presented any evidence of coercion or facts to support that the statement was not voluntary; indeed, he states that Mantilla and Haggerty did not even ask if he consented to be searched.  Pl. 56.1 Counter ¶ 12.  He volunteered his consent to this search unprompted.

Even if Plaintiff had not consented, Defendants argue that the initial search and search at the van were permissible because they had at least arguable probable cause to arrest Plaintiff and the searches were incident to that lawful arrest.  Br. at 11-13.  The Court agrees.

A police officer with probable cause to arrest an individual may search that person "not only [as] an exception to the warrant requirement of the Fourth Amendment, but . . . also [as] a 'reasonable' search under that Amendment." *United States v. Robinson*, 414 U.S. 218, 235 (1973).  "In the context of a warrantless search . . . an officer is entitled to qualified immunity if the officer had at least 'arguable probable cause,' meaning that 'it was objectively reasonable for the officer to believe that probable cause existed, or . . . officers of reasonable competence could disagree on whether the probable cause test was met.'" *Serrano v. City of New York*, 793 F. App'x 29, 30 (2d Cir. 2019) (quoting *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017)).  Here, it was objectively reasonable for the officers to believe they were entitled to search Plaintiff on both occasions because, as the Court already found, it was objectively

reasonable for the officers to believe they had probable cause to arrest Plaintiff. *See supra* at 13-16; *see Serrano,* 793 F. App'x at 30-31 (affirming the district court's ruling that police officers were entitled to qualified immunity as to unreasonable search claim because the officers had at least arguable probable cause to arrest the plaintiff for drug activity); *Barnes v. Carolan*, 819 F. App'x 51, 53 (2d Cir. 2020) ("Because the defendants had at least arguable probable cause to arrest Barnes for an open container violation, the search was also lawful."); *Lin v. City of New York*, No. 14-cv-09994 (PAE), 2016 WL 7439362, at *13 (S.D.N.Y. Dec. 21, 2016) (concluding that the initial search of the plaintiff's pockets after lawful a arrest "did not preclude the later, more extensive search of her person minutes later at the van").

The parties do not assert that the standard is any different under state law and, accordingly, the Court finds in favor of Defendants on Plaintiff's federal and state claims of unlawful search and seizure.

## V.      Assault and Battery and Excessive Force (Counts 5 and 6)

Defendants move for summary judgment on Plaintiff's claims that Defendants committed assault and battery and used excessive force when arresting him. Br. at 13-15. The facts underlying Plaintiff's claims are essentially undisputed. When Plaintiff was arrested, he did not resist, and other than placing Plaintiff in handcuffs, neither Mantilla nor Haggerty used any force to effectuate the arrest. Pl. 56.1 Counter ¶ 11. Plaintiff does not dispute these facts, contending only that "any arrest necessarily involves force." *Id.* Plaintiff further does not dispute that Defendants transported Plaintiff to the NYPD prisoner van, and when Plaintiff said his handcuffs were too tight, one of the detectives loosened them. *Id.* ¶ 14. Finally, it is undisputed that Plaintiff did not suffer any physical injury from the arrest or handcuffing. *Id.* ¶ 19.

Under New York law, "[a]n 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact

22

with another person without consent." *United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993).  "A plaintiff asserting a battery claim against a police officer must 'prove that [the officer's] conduct was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties.'" *Chamberlain v. City of White Plains,* 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (quoting *Nimely v. City of N.Y.*, 414 F.3d 381, 391 (2d Cir. 2005)).  "[W]ith the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical." *Id.*  However, "under New York state law, assault and battery claims are more plaintiff friendly, because under New York law '[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.'" *Graham v. City of New York*, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) (quoting *5 Borough Pawn, LLC. v. Marti*, 753 F.Supp.2d 186, 201 (S.D.N.Y.2010)).  On the other hand, "[a] lawful arrest is not an assault or battery under New York law, provided the force used is reasonable." *Figueroa v. Mazza*, 825 F.3d 89, 105 n.13 (2d Cir. 2016).

With respect to the federal excessive force claim, courts must analyze such claims under the reasonableness standard of the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  "A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is 'objectively [un]reasonable in light of the facts and circumstances confronting' the officer." *Lennox v. Miller*, 968 F. 3d 150, 155 (2d Cir. 2020) (quoting *Graham*, 490 U.S. at 397).  Such an analysis must be undertaken without regard to the underlying intent or motivation of the officer.  *Graham*, 490 U.S. at 397.  While the totality of the circumstances must be evaluated, "[t]he right to effectuate an arrest does include 'the right to use some degree

of physical coercion . . . .'" *Id.* "[N]ot every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional

rights." *Mesa v. City of New York*, No. 09-cv-10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y.

Jan. 3, 2013) (internal citation omitted). In evaluating the objective reasonableness of the force,

"the extent of injury may also provide some indication of the amount of force applied." *Wilkins

v. Gaddy*, 559 U.S. 34, 37 (2010).

Mantilla and Haggerty had arguable probable cause to arrest Plaintiff, *see supra* at 13-16,

and therefore the assault and battery claim related to his arrest must be dismissed unless there is

an issue of fact as to whether the force used with respect to the arrest was unreasonable. *See

Figueroa*, 825 F.3d at 105 n.13. Similarly, the Court must examine the objectively

reasonableness of the force used for purposes of Plaintiff's Fourth Amendment excessive force

claim. *See Lennox*, 968 F. 3d at 155.

Because no reasonable jury could find that the force that was used with respect to

Plaintiff was objectively unreasonable, Defendants are entitled to summary judgment on the

assault and battery and excessive force claims. Plaintiff points to the "cuffing and touching" of

Plaintiff when he was being arrested and the "pain and discomfort as he was physically cuffed

inside a van during transport for approximately one and a half (1 ½) hours after being arrested[.]"

Opp. at 20. It was objectively reasonable to handcuff Plaintiff after he was arrested. *See, e.g.*,

*Kayo v. Mertz*, 531 F. Supp. 3d 774, 798 (S.D.N.Y. 2021) (noting that "[o]fficers are entitled to

use some amount of force in effecting an arrest"). In evaluating the objective reasonableness of

the use of handcuffs, courts look to whether the handcuffs were unreasonably tight, whether

officers ignored arrestee's pleas to that effect, and the degree of injury to the arrestee's wrists.

*See Ali v. Ramos*, No. 16-cv-01994 (ALC), 2020 WL 5817009, at *5 (S.D.N.Y. Sept. 30, 2020);

24

*Layou v. Crews*, No. 11-cv-00114 (LEK) (RFK), 2013 WL 5494062, at *9 (N.D.N.Y. Sept. 30, 2013).  It is undisputed that Defendants loosened the handcuffs immediately when Plaintiff complained that they were too tight.  Pl. 56.1 Counter ¶ 14.  And Plaintiff suffered no physical injury from the handcuffs.  *Id*. ¶ 19.  *See Omor v. City of New York*, No. 13-cv-02439 (RA), 2015 WL 857587, at * 7 (S.D.N.Y. Feb. 27, 2015) ("Courts in this Circuit have generally found that handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort or bruising.").  No reasonable jury could find that the force that was used was objectively unreasonable under the circumstances here.

Therefore, summary judgment is granted for Defendants as to both the assault and battery and the excessive force claims.[3]

## VI.   Failure to Intervene (Counts 17-18)

Finally, the Court turns to Defendants' argument that the Court should dismiss the failure to intervene claim because Defendants committed no constitutional violations.  Br. at 17-18.  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being

---

[3] Insofar as Plaintiff is bringing an excessive force or false arrest claim against UC 391, it is undisputed that UC 391 was not involved in any use of force against Plaintiff.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal citation and quotation marks omitted).  Since Plaintiff has not identified any evidence that UC 391 was present for the alleged use of force during the arrest, and it is wholly improbable as an undercover officer that he would have any personal involvement in the physical arrest, any claim of excessive force or assault and battery against him is dismissed.  *See, e.g.*, *Alicea*, 2016 WL 2343862, at *7 ("Given the absence of any evidence that Sergeant Cruz was present for the alleged use of excessive force . . . summary judgment should be granted dismissing the excessive force . . . claim against Sergeant Cruz").  There can also be no failure to intervene claim against UC 391 since there is no underlying constitutional violation for excessive force.  *See Benny v. City of Long Beach*, No. 20-cv-01908 (KAM) (ST), 2022 WL 2967810, at *22 (E.D.N.Y. July 27, 2022) ("[a]n underlying constitutional violation is a precondition of a failure-to-intervene claim").

used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations and quotation marks omitted).  Failure to intervene requires that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

The Court has ruled in favor of Defendants on most claims, finding that there were no constitutional violations or that the claims have been abandoned.  *See supra* at 7-25.  With respect to all of these claims, there can be no claim of failure to intervene because there was no constitutional violation.  *See Kayo*, 531 F. Supp. 3d at 799 (granting summary judgment on failure to intervene claim because "there [was] no underlying constitutional violation").

The only alleged constitutional violations that remain are claims that UC 391 falsely arrested and maliciously prosecuted Plaintiff when he misidentified him as the individual who sold him marijuana.  Plaintiff has not set forth any evidentiary basis, even a theory, for a jury to find that the other officers, Haggarty and Mantilla, failed to intervene in that misidentification since they were not involved with the drug sale or UC 391's identification, and it was objectively reasonable for them to rely on the information provided by UC 391 in arresting and prosecuting Plaintiff.  *See supra* at 13-16, 18-19.

Summary judgment is therefore granted on the failure to intervene claim.

## CONCLUSION

For the reasons stated above, Defendants' summary judgment motion is GRANTED in part and DENIED in part.  The Court grants Defendants summary judgment on Counts 1, 2, 5, 6,

9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and dismisses those claims.  Summary judgment is also granted as to Defendants Haggarty and Mantilla on Counts 3, 4, 7, and 8 for false arrest and malicious prosecution under federal and state law.  Summary judgment is denied as to Counts 3, 4, 7, and 8 with respect to UC 391 and the City of New York for false arrest and malicious prosecution under federal and state law.

IT IS FURTHER ORDERED that the parties shall, within **21 days from the date of this order**, file a letter to the Court proposing next steps for the remainder of this litigation.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 79.

Dated: September 5, 2023
New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

27